UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTRISHARE, INC., a California corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a Connecticut Corporation, CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut Corporation, and DOES 1 THROUGH 10, inclusive,<br><br>            Defendants. | No.  2:13-cv-02378-JAM-AC<br><br>**ORDER DENYING NUTRISHARE'S MOTION TO STRIKE AND MOTION TO DISMISS IN THEIR ENTIRETY** |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>            Counter-Claimants,<br><br>     v.<br><br>NUTRISHARE, INC.,<br><br>            Counter-Defendant. | |

     This matter is before the Court on Plaintiff and Counter-Defendant Nutrishare, Inc.'s ("Nutrishare") Motion to Dismiss

1

(Doc. #13) Defendants and Counter-Claimants Connecticut General Life Insurance Company and CIGNA Health and Life Insurance Company's (collectively "CIGNA") Counterclaim (Doc. #8) and Nutrishare's Motion to Strike (Doc. #12) portions of the Counterclaim.[1]  CIGNA filed oppositions to both motions (Doc. #17-18) and requests judicial notice of several documents (Doc. #17-1).  Plaintiff filed replies to both (Doc. #20-21) and also seeks judicial notice of one document (Doc. #19).  For purposes of judicial efficiency, both motions are considered together here.

I.   FACTUAL ALLEGATIONS IN THE COUNTERCLAIM

The Counterclaim states four causes of action against Nutrishare: the first two are brought pursuant to § 502(a)(3) of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, in order to redress alleged violations of ERISA plans; the third claim is for violations of California Business and Professions Code § 17200, *et seq.*, California's unfair competition law ("UCL"); and the fourth is for fraud.

As alleged in the Counterclaim, CIGNA serves as the claims administrator and/or the insurer of employee health benefit plans governed by ERISA that provide reimbursement for covered medical expenses incurred by individual plan participants and beneficiaries covered under the plans.  CC ¶ 2.  According to the Counterclaim, CIGNA acts as a claims review fiduciary, either as

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for February 19, 2014.

Case 2:13-cv-02378-JAM-AC Document 25 Filed 03/14/14 Page 3 of 20

the third party administrator of a self-funded, employer-sponsored group health plan, or as an insurer of such employer-sponsored ERISA plans. CC ¶ 16. Members of these plans may select to receive medical treatment from "in-network" or "out-of-network" providers. Participants must pay more for healthcare provided to them outside of CIGNA's network in order to offset increased costs and to incentivize them to choose in-network providers. Id. ¶ 2. Obtaining "in-network" care is more cost effective because healthcare providers agree in advance to a discounted fee schedule, enabling controlled and predictable costs to the benefit of all involved. Id. Participants are advised of the benefits covered by their plans in Summary Plan Descriptions ("SPDs"), including the variance in charges between in-network and out-of-network services. Id. ¶¶ 19-22. The SPDs provide that CIGNA is entitled to recover any overpayments and to enforce the terms of the plans by invoking equitable remedies. Id. ¶¶ 24-25.

Nutrishare is a medical provider specializing in "home infusion" and the provision of Total Parenteral Nutrition ("TPN") to consumers. CC ¶ 17. Nutrishare is outside of CIGNA's network of providers. Id. ¶ 3. CIGNA alleges that Nutrishare fails to disclose to CIGNA patients that it is an "out-of-network" provider or that the cost of the treatment Nutrishare provides is significantly higher than "in-network" providers. Id. ¶ 4. In addition, it alleges Nutrishare told some participants that they would not be billed at all for Nutrishare's services. Id. Nutrishare would then bill CIGNA at exorbitant rates while misrepresenting the amounts it usually accepts for the services

provided and what the "actual, total charges" for those services were.  Id. ¶¶ 3, 6-7, 27-32, 39.  CIGNA alleges Nutrishare failed to inform CIGNA that it was not charging the required co-payments, deductibles, or coinsurance.  Id.  CIGNA alleges that this has resulted in Nutrishare fraudulently billing CIGNA for services provided to plan participants since 2003.  Id. ¶ 7.  It estimates that Nutrishare has fraudulently billed over $6 million in inflated charges since 2008.  Id.

## II.   OPINION

### A.   Judicial Notice

CIGNA requests judicial notice (Doc. #17-1) of three documents.  The first two are the tentative ruling from a California Superior Court case, Aetna Life Insurance Company v. Bay Area Surgical Management, et al., and the transcript of the hearing wherein the court adopts that ruling.  CIGNA RJN Exh. A & B.  The third is a ruling from the United States District Court for the District of New Jersey in Connecticut General Life Insurance Company v. Roseland Ambulatory Center, No. 12-cv-05941-DMC.  Id. Exh. C.  Nutrishare seeks judicial notice of a California Superior Court order in Washington Township Health Care District v. Aetna Health of California, et al. (Doc. #19).

Rule 201(b) of the Federal Rules of Civil Procedure provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Because the contents of public court records "can be accurately and readily determined from sources

4

1 whose accuracy cannot reasonably be questioned," both CIGNA's and
2 Nutrishare's requests for judicial notice are GRANTED. However,
3 the Court merely takes notice of the existence of these
4 documents, not the truth of any facts asserted in them. See,
5 e.g., Allstate Ins. Co. v. Pira, 2012 WL 1997212 (N.D. Cal.
6 2012).

    B.    Motion to File a Sur-Reply

8 CIGNA requests the Court to strike certain misstatements and
9 arguments contained in Nutrishare's Reply to CIGNA's opposition
10 to the Motion to Dismiss, or in the alternative, requests leave
11 to file a sur-reply (Doc. #23).
12 The Court "does not consider arguments first set forth in a
13 reply brief." Powell v. Union Pac. R. Co., 864 F. Supp. 2d 949,
14 962 (E.D. Cal. 2012). Therefore, CIGNA's request to strike
15 arguments first raised by Nutrishare in its reply is unnecessary,
16 as would be a sur-reply. Accordingly, these requests are DENIED.

    C.    Motion to Dismiss

18 Nutrishare presents a series of arguments in its Motion to
19 Dismiss the Counterclaim; each will be addressed in turn.

    1.    Standing[2]

21 Nutrishare first contends that CIGNA lacks standing to
22 bring its claims because it has not suffered an injury-in-fact
23 and fails to sufficiently allege it is authorized to bring these
24 claims as a fiduciary. MTD at pp. 3-7.
25 An indispensable element of federal standing is that a party

---

[2] The Court has considered the supplemental authority regarding standing submitted by Nutrishare (Doc. #24). However, the authority does not alter the Court's decision in this matter.

brining a claim must have suffered an "injury in fact." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). This is defined as an "invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" Id. (citations omitted). Although the party invoking federal jurisdiction bears the burden of establishing an injury in fact, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." Id.; see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1140 (9th Cir. 2003).

Nutrishare contends CIGNA lacks standing because it only administers many of these ERISA plans and an ERISA plan "must bring a claim in its own name to satisfy Article III standing requirements." MTD at pp. 3-4.

ERISA specifically identifies who may bring suit to enforce its provisions. A civil action to enforce ERISA may be brought "by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3). An ERISA fiduciary includes anyone who exercises any discretionary authority or control over the plan's management, anyone who exercises any authority or control over the management of its assets, and anyone having any discretionary authority or responsibility in the plan's administration. 29 U.S.C. § 1002(21)(A); see also US Airways, Inc. v. McCutchen, 133 S. Ct. 1537, 1544-45 (2013); Arizona State Carpenters Pension Trust Fund v. Citibank, 125 F.3d 715, 721-22 (9th Cir. 1997). Although third-party administrators are not fiduciaries under ERISA when they merely perform ministerial duties or process claims, administrators can be an ERISA fiduciary if "they are

6

given the discretion to manage plan assets or to determine claims made against the plan.  An insurer will be found to be an ERISA fiduciary if it has the authority to grant, deny, or review denied claims."  <u>Kyle Railways, Inc. v. Pacific Admin. Serv. Inc.</u>, 990 F.2d 513, 516, 517-18 (9th Cir. 1993).

Based on the allegations in the Counterclaim, CIGNA is the claims administrator for the ERISA plans at issue and has discretionary authority and control regarding claims made under the plan.  CC ¶¶ 2, 9, 16.  Therefore, it has a fiduciary duty to enforce the terms of the ERISA plans and thus standing to bring the federal claims at issue.  Nothing further in the way of proof is necessary at this stage of the litigation.

Nutrishare also argues CIGNA lacks standing to bring its UCL claims.  MTD at pp. 5-6.  Any party who has suffered injury in fact and has lost money or property as a result of unfair competition has standing to bring a claim under the UCL.  <u>Kwikset Corp. v. Superior Court</u>, 51 Cal. 4th 310, 320-21 (2011).  For the same reasons discussed above, CIGNA has adequately alleged an injury in fact and causation to establish standing for its UCL claim. Indeed, CIGNA alleges Nutrishare's scheme has caused it to pay Nutrishare over six million dollars for procedures that should have cost twenty to thirty percent less than that amount.  CIGNA's Counterclaim also includes alleged detailed, specific examples of how Nutrishare's schemes caused such injuries. CC¶30. Accordingly, Nutrishare's motion to dismiss based on lack of standing is DENIED.

        2.    <u>Failure to Exhaust Administrative Remedies</u>

Nutrishare contends CIGNA's ERISA claims must be dismissed

because it has failed to exhaust its administrative remedies.  In its Motion to Dismiss, Nutrishare argues that CIGNA's claims for recoupment of ill-gotten gains constitute "adverse benefits determinations," triggering ERISA notice requirements.  MTD at pp. 8-10.  However, Nutrishare fails to provide persuasive authority for such a contention.  Neither the relevant ERISA provisions nor rulings from other federal courts indicate any such exhaustion requirement for the equitable claims in the Counterclaim.  See 29 U.S.C. § 1133 (claims procedure applies to benefits claims that have been denied); 29 C.F.R. § 2560.503-1(b); see also Aetna Life Ins. Co. v. Bay Area Surgical Mgmt., LLC, C-12-05829 RMW, 2013 WL 685375, at *6 (N.D. Cal. 2013) (finding plaintiff's claims to recover previously dispensed medical benefits did not involve any "adverse benefits determination").

The Court declines to imply a requirement not clearly provided for in ERISA.  Accordingly, Nutrishare's motion to dismiss the ERISA claims for failure to exhaust administrative remedies is DENIED.

        3.    Failure to Comply with Cal. Ins. Code § 10123.145

Nutrishare next contends CIGNA has failed to comply with the requirements of California Insurance Code § 10123.145.  MTD at pp. 12-13.  It argues the allegations relating to the fully-insured claims should therefore be dismissed.

The Insurance Code provision cited by Nutrishare sets forth the responsibilities of providers who are given notice of an overpayment.  It states in relevant part that "the provider shall reimburse the insurer" unless it contests the overpayment

determination.  Cal. Ins. Code § 10123.145(a).  The provision does not place any restrictions on CIGNA's ability to bring its claims in this action.  Accordingly, Nutrishare's motion to dismiss based on failure to comply with the California Insurance Code is DENIED.

### 4. Failure to Plead a Viable Fraud Claim

Nutrishare contends CIGNA has failed to plead its claim for fraud with the requisite particularity and has failed to plead justifiable reliance, a required element.  MTD at pp. 13-16.

Under Rule 9 of the Federal Rules of Civil Procedure, a complaint must "state with particularity the circumstances constituting fraud . . . including the who, what, when, where, and how of the misconduct charged."  Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citation omitted).

Nutrishare argues CIGNA has failed to state what representations were made, to whom they were made, when they were made, or how CIGNA relied on them.  MTD at p. 14.  However, as indicated in its Opposition, CIGNA provides specific details in its Counterclaim of the representations that underlie its claims.  Opp. MTD at pp. 16-17; CC ¶¶ 28-32.

CIGNA specifically alleges Nutrishare submitted standard forms that intentionally misrepresented the "actual, total charges" for its services.  CC ¶¶ 28-29.  The Counterclaim identifies specific categories of claims that were made by Nutrishare for certain services, the number of claims made, a specific time period during which those claims were made, and the amount of reimbursement induced by these fraudulent claims.

9

1  Id. ¶¶ 28-32.  Although the Counterclaim does not specify each
2  and every transaction, such particularity is neither practical
3  nor required.  Even with the heightened pleading requirements,
4  "[l]ess specificity is required when 'it appears from the nature
5  of the allegations that the [cross]defendant must necessarily
6  possess full information concerning the facts of the
7  controversy.'"  Comm. On Children's Television, Inc. v. Gen.
8  Foods Corp., 35 Cal. 3d 197, 217 (1983) (citation omitted)
9  (superseded on other grounds).  When dealing with thousands of
10 instances, it is often the case that a complaint or counterclaim
11 laying out each and every misrepresentation in detail would
12 "provide less effective notice and be less useful in framing the
13 issues than would a shorter, more generalized version."  Id.  As
14 alleged, Nutrishare itself submitted each of the claims
15 identified generally by CIGNA and has certainly been provided
16 notice as to CIGNA's bases for its fraud claim.  The Court finds
17 the claim for fraud has been pleaded with the particularity
18 required by Rule 9.

19      Additionally, Nutrishare argues CIGNA did not adequately
20 allege that it justifiably relied on the representations of the
21 prices charged by Nutrishare, required for a viable cause of
22 action for fraud.  MTD at pp. 15-16.  Nutrishare contends CIGNA
23 did not rely on the alleged misrepresentations of its charges
24 for services in determining the amounts it would reimburse
25 Nutrishare.

26     The Counterclaim specifically alleges that CIGNA relied on
27 the misrepresentations in the claim forms submitted by
28 Nutrishare, leading it to reimburse Nutrishare amounts in excess

10

of what was due under the terms of the plans.  CC ¶¶ 30, 34, 65. The Counterclaim specifically alleges: "CIGNA typically paid NUTRISHARE based upon and in reliance upon the claim forms submitted by NUTRISHARE.  As a result, NUTRISHARE received payments well in excess of the amounts due pursuant to the terms of the Plans" (¶ 34); and CIGNA relied on Nutrishare's "false representations and omissions, and based upon such reasonable reliance, CIGNA paid NUTRISHARE based upon the artificially inflated amounts submitted in the claims" (¶ 65).  The Court finds this adequately alleges justifiable reliance.

Accordingly, Nutrishare's motion to dismiss CIGNA's claim for fraud is DENIED.

### 5. Preemption of State Law Claims

Nutrishare contends CIGNA's state law claims are both preempted under ERISA's broad preemption scheme.  MTD at p. 16. They argue that the claims are completely preempted under ERISA section 502(a), and also subject to conflict preemption under section 514(a).

#### a. Conflict Preemption § 514(a)

ERISA contains a preemption provision that states it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  ERISA § 514(a), as amended, 29 U.S.C. § 1144(a).  ERISA's preemption clause is "deliberately expansive," Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45–46 (1987), and "contains one of the broadest preemption clauses ever enacted by Congress."  Spain v. Aetna Life Ins. Co., 11 F.3d 129, 131 (9th Cir. 1993) (citations omitted), cert. denied, 511 U.S. 1052 (1994).  However, the

Supreme Court has "admonished that the term ['relate to'] is to be read practically, with an eye toward the action's actual relationship to the subject plan." Providence Health Plan v. McDowell, 385 F.3d 1168, 1171-73 (9th Cir. 2004) (citing New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655-56 (1995)).

The Supreme Court has produced a two-part inquiry when applying the preemptive effect of the provision: "A 'law "relate[s] to" a covered employee benefit plan for purposes of § 514(a) "if it [1] has a connection with or [2] reference to such a plan."'" California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc., 519 U.S. 316, 324-25 (1997) (quoting District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 129 (1992)). Regarding the second inquiry, the Supreme Court has found that "[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . that 'reference' will result in pre-emption." Id. As for the first inquiry, in determining whether the state law has a "connection with" an ERISA plan, courts must "look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive' . . . as well as to the nature of the effect of the state law on ERISA plans." Id. (quoting Travelers Ins. Co., 514 U.S. at 658-59.

The Supreme Court has determined that Congress' aims in passing ERISA's preemption provision were "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial

12

burden of complying with conflicting directives among States or between States and the Federal Government." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990). Otherwise, Congress feared that "the inefficiencies created could work to the detriment of plan beneficiaries" and create a potential for conflict in substantive law. Id.

Nutrishare contends CIGNA's fraud and UCL claims have a "connection to" or "reference to" the ERISA plans. MTD at p. 18. It argues the specific terms of the ERISA plans are the "basis upon which CIGNA contends that overpayments exist and may be recovered by CIGNA" and, therefore, it contends the claims are preempted.

The Counterclaim contains state law claims for fraud and violations of the UCL. Although the claims involve ERISA plans, the state law invoked "does not create an alternative enforcement mechanism for securing benefits under the terms of [the] ERISA-covered plans." Blue Cross of California v. Anesthesia Care Associates Med. Grp., Inc., 187 F.3d 1045, 1054 (9th Cir. 1999).

"As with many state laws of general applicability," CIGNA's state law claims have only a "'tenuous, remote, or peripheral connection with covered plans.'" Anesthesia Care Associates, 187 F.3d at 1054 (quoting Travelers, 514 U.S. at 661). "Where the meaning of a term in the Plan is not subject to dispute, the bare fact that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision." Id. at 1051.

Although Nutrishare contends that a determination of its

obligations require consultation with the plans, the relevant claims allege that Nutrishare made fraudulent claims in the documents it submitted to CIGNA, causing CIGNA to pay out amounts in excess of what was owed. These claims do not require significant interpretation of the ERISA plans. Therefore, the claims are not subject to conflict preemption under section 514(a).

### b. Complete Preemption § 502(a)

Nutrishare also contends the state claims are completely preempted because they fall within the comprehensive scheme of civil remedies under section 502(a). MTD at p. 16.

The Supreme Court has formulated a two-prong test to determine whether a claim is completely preempted by ERISA. Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004); Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 946 (9th Cir. 2009). Under the test, a state law claim is completely preempted if (1) an individual could have brought the claim under ERISA section 502(a); and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." Davila, at 210.

Turning to the second prong first, Nutrishare argues that CIGNA has failed "to identify any duties or obligations that arise independently of ERISA." Reply at p. 10. However, the UCL and fraud claims both involve violations of duties completely independent of ERISA. CIGNA has alleged that Nutrishare fraudulently misrepresented the rates for its services. This would be an actionable claim and a violation of a legal duty regardless of whether an ERISA plan was involved.

14

1    Nutrishare points to Cleghorn v. Blue Shield of California,
2 408 F.3d 1222, 1225 (9th Cir. 2005) as support for its complete
3 preemption claim.  In Cleghorn, the plaintiff had submitted a
4 claim for coverage under the terms of a health plan covered by
5 ERISA.  Id. at 1224.  After he was denied benefits, he brought a
6 UCL claim, among others, against the insurer seeking damages for
7 the unlawful withholding of benefits.  Id.  The Ninth Circuit
8 found the claims conflicted with the exclusive civil enforcement
9 scheme established by ERISA and thus were preempted.  Id. at
10 1227.  The case involved a determination of whether the defendant
11 improperly denied the plaintiff benefits under the terms of the
12 ERISA plan.  Id.  The court reasoned that any duty the defendant
13 had to reimburse the plaintiff existed only because of the ERISA-
14 regulated plan, "precisely the kind of claim[]" that is intended
15 to be preempted.  Id. at 1225-26.
16    However, here, the issue is whether Nutrishare made
17 knowingly false representations to CIGNA about the charges for
18 its services and whether that constituted an unlawful practice.
19 Nutrishare's alleged false representations in the submitted
20 claims implicate an independent legal duty.  Davila, 542 U.S. at
21 210.  "These claims do not rely on, and are independent of, any
22 duty under an ERISA plan."  Marin Gen. Hosp., 581 F.3d at 949.
23 Therefore, CIGNA's state law claims are not subject to complete
24 preemption under ERISA as they fail to satisfy the second prong
25 of the Davila test.
26    A more apt factual comparison is found in Trustees ex rel.
27 N. California Gen. Teamsters Sec. Fund v. Fresno French Bread
28 Bakery, Inc., CV F 12-0187 LJO BAM, 2012 WL 3062174 (E.D. Cal.

2012). In Fresno French Bread, the plaintiffs, bringing their claims as fiduciaries of the plan, alleged that defendants misrepresented an individual's eligibility for benefits, improperly inducing the ERISA plan to cover the individual's health costs. Id. at *1-2. The plaintiffs sought "to recover monies which the fund paid based on the alleged misrepresent[ations]." Id. The defendants argued that ERISA preempted the plaintiff's claims for fraud and negligent misrepresentation. Id. at *7. The court found the fraud claims constituted an attempt by a fiduciary "to protect the fund's integrity and the best interests of its beneficiaries." Id. at *8. Finding no evidence that such claims erode ERISA purposes or interfere with its exclusive remedial scheme, the court found they were not subject to preemption and allowed the state law claims for fraud to survive alongside plaintiffs' ERISA claim seeking equitable restitution. Id.

Here, CIGNA brings state law claims against Nutrishare for obtaining funds from the ERISA plans through fraudulent means. The Court finds such claims constitute an attempt by CIGNA, a fiduciary of the plans, to protect the integrity of the plans and ultimately the best interests of their beneficiaries. As such, it does not conflict with the enforcement scheme laid out by ERISA or with Congress' intent in passing it into law.

Accordingly, Nutrishare's motion to dismiss the state law claims based on ERISA preemption under either section 514 or 502 is DENIED.

### 6. Lawfulness of Nutrishare's Actions

Nutrishare contends that even if the allegations are true,

CIGNA's counterclaims for fraud and violation of the UCL must fail as a matter of law because its actions are lawful under California law. MTD at pp. 18-21.

Nutrishare contends it simply discounted patients' coinsurance, which is lawful under California law. It relies on a provision of the Affordable Care Act, a California insurance regulation, a thirty-year-old Attorney General Opinion, and a California Court of Appeal case. MTD at pp. 18-21. The references to the Affordable Care Act and the California Code of Regulations have no application to the issue presented by Nutrishare's motion.

The Attorney General Opinion addresses the specific issue of whether a dentist may claim as a "usual fee" an amount that does not take into consideration certain discounts granted to patients. 64 Ops. Cal. Atty. Gen. 782, 1981 WL 126814, at *2-4 (1981). The Attorney General based its decision largely on the ambiguity of the term "usual fee," resolving it against the insurer who drafted the policy. Id. The Counterclaim alleges Nutrishare affirmatively misrepresented the "actual, total charges" for its services as part of a larger scheme to defraud CIGNA. CC ¶ 29. There is no textual ambiguity in the alleged fraud, and therefore, Nutrishare's reliance on the Opinion in support of its motion is misplaced.

Nutrishare also cites to People v. Duz-Mor Diagnostic Laboratory, Inc., 68 Cal.App.4th 654 (1998). In Duz-Mor, a clinical laboratory negotiated discounts with physician clients for tests performed on their private-pay patients. Id. at 661-62. Nutrishare argues that since the Duz-Mor court found

17

nothing unlawful or unfair about this practice, then its alleged practices are also lawful.  However, Nutrishare has failed to show how the very distinct factual circumstances in Duz-Mor have any bearing on those alleged in the Counterclaim.  The Court finds the case does not support Nutrishare's contention that the Counterclaim fails to state viable causes of action.

In the absence of any persuasive arguments or authority, Nutrishare's motion to dismiss the state law claims on the grounds that the alleged practices are lawful is DENIED.

### D. Motion to Strike

Nutrishare has also filed a concurrent Motion to Strike (Doc. #12).  It moves the Court to strike any references or comparisons to the payments made by in-network providers.

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike from a pleading any impertinent or immaterial matter.  "Motions to strike are disfavored and infrequently granted.  A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Bassett v. Ruggles, No. CV-F-09-528-OWW-SMS, 2009 WL 2982895, at *24 (E.D. Cal. 2009) (internal citations omitted).

Nutrishare argues it is an out-of-network, non-contracted provider, and, therefore, any comparisons of its charges to those of providers who have pre-negotiated rates with CIGNA are immaterial and impertinent.  Motion to Strike at pp. 2-3.  It moves to strike paragraph 30 of the Counterclaim in its entirety.

As an initial matter, Nutrishare's motion objects to the inclusion of references to the in-network contract rates.  Id. at

1  p. 5.  Even were this Court to find the references to those rates
2  immaterial or impertinent, it would not warrant the Court's
3  striking of the entirety of paragraph 30 as requested by
4  Nutrishare, as that paragraph includes details of the claims
5  submitted by Nutrishare to CIGNA in addition to the references
6  and comparisons to in-network rates.  CC ¶ 30.  However, the
7  issue is rendered moot because the Court finds Nutrishare's
8  arguments unpersuasive.
9      While a contention that Nutrishare's charges should have
10 been equal to those of the average in-network provider would be
11 impertinent, the Counterclaim does not include such an
12 allegation.  In fact, it is clear from the Counterclaim that the
13 purpose of having in-network providers is for the reduced cost to
14 both the insurers and the insured, a benefit allegedly undermined
15 by Nutrishare's practices.  Nutrishare appears to jump to the
16 conclusion that through the language in paragraph 30 CIGNA is
17 proposing the theory that any deviation between the average in-
18 network rate and Nutrishare's rate is evidence of exorbitant
19 charges.  It does not appear to the Court that such a proposition
20 is being asserted.  The Court cannot conclude at this stage of
21 the litigation that the use of the average in-network rates as a
22 general reference point "could have no possible bearing on the
23 subject matter of the litigation" before it.  Bassett, 2009 WL
24 2982895, at *24.
25      Accordingly, Nutrishare's Motion to Strike is DENIED.
26
27                          III.  ORDER
28      For the reasons set forth above, the Court DENIES

19

1  Nutrishare's Motion to Dismiss and its Motion to Strike.
2       IT IS SO ORDERED.
3       Dated:  March 13, 2014

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE